STATE of Wisconsin, Plaintiff-Respondent,

v.

Marvin HEYER, Defendant-Appellant,

and Kenneth P. PETERSON, Appellant.

Court of Appeals

*No. 91–1069. Submitted on briefs January 8, 1992.—Decided January 28, 1993.*

(Also reported in 496 N.W.2d 779.)

For the defendant-appellant the cause was submitted on the brief of *Kenneth P. Peterson* of La Crosse.

For the plaintiff-respondent the cause was submitted on the brief of *Rhonda J. Martinson,* assistant district attorney for La Crosse County, of La Crosse.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

GARTZKE, P.J. Marvin Heyer and his attorney, Kenneth Peterson, appeal from an order directing each to pay La Crosse County one-half of the state's trial expenses incurred before the court declared a mistrial in a criminal action against Heyer. Appellants contend that the court erred when it granted a mistrial, no statute authorizes a court to impose costs in a criminal case, the court lacks inherent power to impose such costs, the court erroneously exercised its discretion when entering the expense order, and the state's request for costs was untimely. We conclude that the trial court possesses statutory authority to make the order, the court properly exercised its discretion, and the state's request was timely. We affirm the order without reaching the appellants' other contentions.

The charges against Heyer are third-degree sexual assault, sec. 940.225(3), Stats. (1989–90), fourth-degree sexual assault, sec. 940.225(3m), Stats. (1989–90), and making harassing phone calls, sec. 947.012(4), Stats. (1989–90), and arose from incidents in 1989. Heyer claimed that the woman consented to sexual intercourse and contacts. Before the jury trial began on November 6, 1990, the court ruled that testimony regarding prior sexual contact between Heyer and the woman would not be allowed. The propriety of that order is unchallenged.

Notwithstanding the court's order, during the first day of trial, Heyer's attorney asked questions implying

that a sexual relationship had existed between Heyer and the woman. When cross-examining an investigating officer, the attorney asked if Heyer had said "it was an affair." At the end of the day, Heyer's attorney asked the woman's husband during cross-examination whether a sexual relationship had existed between Heyer and the woman.

On November 7, 1990, the second day, the prosecutor requested that the court instruct the attorney that a mistrial and a contempt order could result from implications that a sexual relationship had existed. In Heyer's presence, his attorney replied that he had instructed Heyer, if he took the stand, to make no reference to a previous relationship. Heyer took the stand. During direct examination by his attorney, Heyer testified that he and the alleged victim kissed and hugged for two or three minutes and that she kissed him, "[a]s we done before." The court immediately granted a mistrial.

In December 1990, the state moved that appellants be ordered to pay the state's trial expenses. When granting the motion, the court said that Heyer and his attorney had deliberately and unjustifiably ignored its order and were determined to get evidence before the jury regarding a past relationship between Heyer and the victim, even though Heyer had not sought permission to do so by motion under sec. 972.11, Stats.[1] Relying on its inherent power, the court granted the state's motion for

---

[1] Section 972.11, Stats., is Wisconsin's "Rape Shield Statute." If a defendant is accused of sexual assault under sec. 940.225, Stats., evidence concerning the complaining witness's prior sexual conduct is not admissible, except under certain circumstances. Section 972.11(2)(b), Stats. For evidence involving such circumstances to be admissible, a pretrial determination to that effect is necessary. Section 971.31(11), Stats.

an order directing Heyer and his attorney to pay the state's trial expenses totaling $1,076.60.

Heyer asserts that because the trial court erred by declaring a mistrial, we should set aside the expense order. The state has not briefed the merits of the mistrial because it contends that issue is not before us, since Heyer has not petitioned for leave to appeal the mistrial order under sec. 808.03(2), Stats. We accept the state's position.

The expense order was entered in a special proceeding and is a final order.[2] Whether appellants should pay the state's expenses was the sole matter in litigation in that proceeding, and the expense order disposes of that entire matter. This satisfies the requirements in sec. 808.03(1), Stats., for a final order. The mistrial order is not final. It requires a second trial and does not dispose of the entire matter in litigation in the criminal action.

An appeal from a final order brings up all prior non-final orders adverse to the appellant and favorable to the respondent made in the action or proceeding not previously appealed and ruled upon. Rule 809.10(4), Stats. However, the expense order was entered in a special proceeding and the mistrial order was entered in the criminal action. An appeal from a final order brings up for review only non-final orders pertinent to the action or proceeding in which the final order was entered.[3]

---

[2] The expense order is analogous to a civil contempt order, another sanction. A contempt order has traditionally been held to be a final order in a special proceeding. *See, e.g., State ex rel. Meggett v. O'Neill*, 104 Wis. 227, 229, 80 N.W. 447, 448 (1889) ("A final order in a civil contempt proceeding is appealable as being one affecting a substantial right in a special proceeding.").

[3] For that reason, we do not review an additional issue appellants have raised: whether the court's ruling during the trial

As a final order, the appeal from the expense order is before us as a matter of right. Section 808.03(1), Stats. We must decide it. The mistrial order is not before us. The mistrial order would be before us only if we granted a petition by Heyer under sec. 808.03(2), Stats., for leave to appeal. He did not file such a petition, and he has filed nothing else which we can reasonably construe as such a petition. We cannot review the merits of the mistrial order at this stage of the litigation. We turn to the expense order.

■

Appellants tell us that when it granted the state's motion for an expense order, the trial court misinterpreted Heyer's testimony. They assert that when he testified that the woman kissed him "as we done before," Heyer could have referred to comparable activities earlier that day. Yet no evidence exists of earlier sexual activity, and Heyer did not argue misinterpretation when the court granted a mistrial. The court could reasonably infer that Heyer's testimony meant to imply there was a prior sexual relationship. We must accept a trial court's choice between reasonable inferences, even if those inferences may conflict. *State v. Friday*, 147 Wis. 2d 359, 370-71, 434 N.W.2d 85, 89 (1989).

Appellants complain that the proper remedy for their behavior is a contempt order. Contempt proceedings would not necessarily compensate the state for its expenses wasted through the appellants' fault. Given a choice between a contempt order and an expense order, the court did not err when it chose the latter.

---

regarding the date of the offense was error. The fact that such an error is claimed in an appeal from the expense order points up the necessity for our holding regarding non-final orders brought up by appeal from a final order in the *same* action or proceeding.

Appellants assert that the trial court lacks the power to order appellants to pay the state's expenses. Having relied on its inherent powers, the trial court did not decide whether a statute authorized the order. An appellate court should dispose of an appeal on the narrowest possible ground. *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989). Statutory authority, if it exists, is a narrower basis for affirmance than is inherent judicial power. We therefore look first to the statutes. We are free to examine a ground other than that relied on by the trial court if the alternate ground results in an affirmance. *State v. Alles*, 106 Wis. 2d 368, 391, 316 N.W.2d 378, 388 (1982).

Section 805.03, Stats., provides that for failure of a party "to obey any order of court, the court in which the action is pending may make such orders in regard to the failure as are just, including but not limited to orders authorized under" sec. 804.12(2)(a), Stats. Section 804.12(2)(b), Stats., provides,

> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

The trial court specifically found that appellants had shown no justification for their failures to obey its order regarding prior sexual contact testimony.

Sections 805.03 and 804.12(2), Stats., authorize a circuit court

to sanction parties for failure to prosecute, failure to comply with procedural statutes or rules, and for failure to obey court orders . . .. Among the sanctions the circuit court may impose under sec. 804.12, Stats., are "imprisonment for contempt, an order that designated facts be taken as established, an order refusing the delinquent party the right to support or oppose designated claims or defenses, striking out pleadings or parts of pleadings, rendering judgment by default, dismissal of the action or of a claim therein, or assessment of expenses and attorneys fees." Judicial Council Committee's Note 1974 for sec. 804.12, Stats. The authority to impose sanctions is essential to the circuit court's ability to enforce its orders and ensure prompt disposition of lawsuits.

*Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 273-74, 470 N.W.2d 859, 863-64 (1991) (citations omitted).

*Johnson* was a civil case, and appellants point out that costs cannot be imposed in a criminal case without statutory authority. *See Faust v. State*, 45 Wis. 273, 278 (1878) (in absence of statute, court cannot adjudge that criminal defendant pay costs or commit defendant for nonpayment of costs). However, *Johnson* dealt with the imposition of sanctions, not allowance of costs. In the appeal before us the trial court did not order appellants to pay costs, in the sense of an allowance to the prevailing party at the conclusion of the case. The court nullified the trial before its conclusion and directed appellants to pay the state's trial expenses, not costs.

Civil procedure rules apply in criminal proceedings, unless the context of a rule manifestly requires a different construction. Section 972.11(1), Stats. The context of sec. 805.03, Stats., does not require a different construction. Section 805.03 itself contains nothing exclud-

171

ing it from application to a violation of a pretrial order that justifies a mistrial in a criminal action. We are satisfied that sec. 805.03 authorizes a trial court in the circumstances before us to order appellants to pay the state's expenses.[4]

Having concluded that statutory authority exists for the expense order, we need not decide whether the trial court has inherent power to render the order in a criminal case.

Appellants' claim that the state's motion for the expense order was untimely is based on sec. 805.16, Stats. That statute governs motions after verdict. It has no relevance to this appeal. No verdict was rendered below.

*By the Court.*—Order affirmed.

---

[4] Heyer argues that because sec. 805.03, Stats., refers only to subsec. 804.12(2)(a), Stats., a trial court may not impose the sanctions listed under subsec. 804.12(2)(b), Stats. We disagree. In *Bell, Metzner & Gierhart v. Stern*, 165 Wis. 2d 34, 41, 477 N.W.2d 289, 292 (Ct. App. 1991), we held that a court exercising its powers under subsec. (2)(a) may also use the sanctions listed under subsec. (2)(b).